IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNIE BURTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 17 C 8508 |
| CHICAGO TRANSIT AUTHORITY, DERRICK PITTMAN, THERESA FLETCHER-BROWN, and VILLETTA WELLS, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Annie Burton filed an employment discrimination suit against the Chicago Transit Authority (CTA) and several of its employees. After the defendants identified problems with her initial *pro se* complaint, the Court granted Burton leave to file an amended complaint, which she eventually did. The defendants have now moved to dismiss the suit on the basis that Burton's amended complaint fails to state any claims upon which relief can be granted. For the reasons below, the Court grants the motion to dismiss but will give Burton one more opportunity to amend her complaint to attempt to state viable claims.

### Background

At this stage, the Court takes as true factual allegations contained in the plaintiff's complaint. As discussed further below, however, the facts alleged in Burton's complaint are disjointed and incomplete, providing only limited support for her claims for relief.

Burton was a bus driver for the CTA from 2013 to 2017. She was injured on duty on October 22, 2016 when her bus was involved in a crash with a driver she suspected was intoxicated. After receiving medical care, Burton apparently asked a supervisor for a ride home as directed by her doctor. The supervisor agreed. But Burton says that the supervisor did not take her home. Instead she says he held her hostage in his CTA-owned vehicle. The complaint doesn't say who the supervisor was, how he detained her, where he took her, or how she escaped. Burton does allege, however, that the supervisor told her he was acting on instructions from another supervisor named Derrick Pittman. She suspects that the unnamed supervisor was also working at the behest of another CTA employee, Marie Marasovich.

After the incident, Burton says that she submitted a complaint to the CTA's EEO office. (She also suggests in passing that she had filed multiple complaints about workplace harassment before the incident described above, including in late September 2016, but provides no details about those complaints.) Burton says that she was subsequently suspended by Marasovich on November 7, 2016. Burton was accused of violating CTA's drugs and alcohol policy. Burton denies that she ever violated the policy and says that the suspension was retaliation for her complaint.

After the November 7 suspension, there is a significant gap in Burton's timeline. She says she filed a charge with the Illinois Department of Human Rights (IDHR) in March 2017, but she has not included that charge in her filings.

Several months later, in October 2017, Burton appears to have met with supervisors about her suspension. Burton says that she expected to complete paperwork at that meeting that would allow her to return from leave. But instead Burton

says she walked into what appears to have been some sort of discipline meeting—though the description is far from clear—where she was found in violation of several rules related to drug and alcohol use at work. The CTA subsequently terminated her employment.

Burton filed this lawsuit about a month later on November 22, 2017, alleging violations of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), and her constitutional rights, which she sought to enforce under 42 U.S.C. §§ 1981 and 1983. The defendants moved to dismiss the case on the bases that Burton had failed to (1) exhaust administrative remedies as required by the various statutes under which she sued and (2) allege facts that, if taken as true, would support liability under any of her various causes of action. The Court granted Burton leave to file an amended complaint that addressed these concerns and directed her "to attach to the amended complaint a complete copy of complaint or complaints filed with the [IDHR]." Dkt. no. 37. Burton filed an amended complaint but included only the cover sheet of an IDHR charge. The Court again instructed Burton to file any and all charges she had registered with the IDHR. She eventually filed a single two-page charge dated February 1, 2018. *See* dkt. no. 44.

Burton's suit names as defendants the CTA and several individuals—Derrick Pittman, Theresa Fletcher-Brown, and Villetta Wells.[1] All the defendants have moved to dismiss, again contending that Burton failed to exhaust administrative remedies before filing the lawsuit and has not stated a claim upon which relief can be granted.

---

[1] Beyond naming her on the first page of the original complaint, however, none of the documents that Burton has submitted mention Wells.

## Discussion

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). For a claim to be plausible on its face, the plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). But these pleading standards "are considerably relaxed" for *pro se* complaints, *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013), and the Court must "interpret the *pro se* complaint liberally," *Sause v. Bauer*, 138 S. Ct. 2561, 2563 (2018). Nevertheless, the Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 633 (7th Cir. 2007) (internal quotation marks omitted).

### A. ADA, ADEA, and Title VII claims

The defendants argue that Burton's claims against the individual defendants and the CTA must be dismissed. Regarding the individual defendants, they are clearly correct. The ADA, the ADEA, and Title VII provide for liability only with regard to the plaintiff's employer, not the plaintiff's supervisors or other individuals working for the plaintiff's employer. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 610 n.2 (7th Cir. 2001) (ADEA); *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (7th Cir. 1999) (ADA and Title VII). The Court dismisses Burton's claims against Pittman, Fletcher-Brown, and Wells under these statutes without leave to amend, because

4

amendment would be futile.  *See Adams v. City of Indianapolis*, 742 F.3d 720, 734 (7th Cir. 2014); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012) ("[A] district court may refuse leave to amend where amendment would be futile.").

Matters are a bit more complicated with regard to Burton's claims against the CTA.  The defendants advance two arguments.  First, they contend that she failed to exhaust administrative remedies as required by the ADA, the ADEA, and Title VII.  Second, they contend that, even if she had exhausted administrative remedies, Burton has failed to allege facts that would entitle her to relief under any of these statutes.

**1.      Exhaustion of administrative remedies**

Plaintiffs alleging discrimination under any of these three statutes must first present their claims in a charge to the EEOC or IDHR before taking them to court.  *See Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019) (Title VII); *Riley v. City of Kokomo*, 909 F.3d 182, 189 (7th Cir. 2018) (ADA); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 920, 921 (7th Cir. 2000) (ADEA).  The one exception to the exhaustion requirement allows a plaintiff to proceed where she alleges misconduct that was never presented to the EEOC or IDHR but which is "reasonably related" to misconduct that was presented to one or both of these agencies.  *See Sauzek,* 202 F.3d at 921.  Notably, however, administrative exhaustion is an affirmative defense, meaning that the defendant will ultimately bear the burden of proof on that question.  *See Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 921-22 (7th Cir. 2007).  It is appropriate to grant a motion to dismiss on the basis of an affirmative defense "[o]nly when the plaintiff pleads [herself] out of court—that is, admits all the ingredients of an impenetrable defense."

5

*Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004).

Taking her submissions as true, the Court concludes that Burton has not pleaded herself out of court regarding the issue of exhaustion. Although Burton has not affirmatively alleged that she exhausted available administrative remedies for her age- and race-discrimination claims, she is not required not do so at this stage; these are not jurisdictional prerequisites to the filing of suit. The defendants note that the only complete IDHR charge mentioned in Burton's amended *pro se* complaint was filed in February 2018, more than two months after this suit was filed, and that that charge alleged only discrimination and retaliation related to a disability. But that charge mentions earlier charges allegedly filed in April and November 2016, though those charges are neither described in nor attached to it. Construing Burton's allegations liberally and taking them as true—as the Court must do at this stage of the case—the Court cannot say definitively that Burton's administrative charges, including the earlier charges just referenced, did not allege her current claims and satisfy the timing requirements of the various statutes. *See* 42 U.S.C. § 2000e-5(f)(1) (requiring that a Title VII lawsuit be filed within ninety days of the issuance by EEOC of a right-to-sue letter or notice of dismissal); *id.* § 12117(a) (adopting Title VII procedures for ADA claims); *id.* § 626(d) (permitting a plaintiff to file an ADEA lawsuit once sixty days have passed since the administrative charge was filed). Burton's complaint therefore does not admit the critical elements of the defendants' exhaustion defense and thus dismissal on that basis under Rule 12(b)(6) would be inappropriate.

Nevertheless, Burton will ultimately need to document the timing of her administrative charges if she hopes to prevail in this suit. If Burton chooses to amend

6

her complaint, as discussed further below, she would be well advised to include specific allegations and documentation of the timing and content of her complaints to the IDHR. Burton should be prepared to show that she filed charges with the IDHR or EEOC covering her current claims within 300 days of the incidents underlying her allegations, *see id.* § 2000e-5(e)(1), and that she filed this lawsuit within ninety days of the issuance of a right-to-sue letter or notice of dismissal by the agency,[2] *see id.* §§ 2000e-5(f)(1), 12117(a).

### 2. Factual allegations

The defendants next contend that Burton failed to allege facts that would, if taken as true, entitle her to relief. "To state a claim of discrimination, [a plaintiff] need[s] to allege only that the employer instituted a specific adverse employment action against [her] based on [a protected characteristic]." *Phillips v. Baxter*, No. 18-1381, 2019 WL 1772882, at *4 (7th Cir. Apr. 23, 2019); *see also Luevano*, 722 F.3d at 1028 (to survive a 12(b)(6) motion, a plaintiff must allege that her employer "instituted a (specified) adverse employment action against the plaintiff on the basis of" her protected characteristic).

The Court concludes that Burton's claims fail even under this forgiving standard. Her submissions to the Court are muddled. For one thing, her original complaint, an attachment to her amended complaint, and both of her briefs on this motion appear to be substantively the same document with only marginal changes from one version to the next. None of the various versions of that document clearly articulates the facts giving rise to Burton's claims. Even construing Burton's allegations liberally, it is not

---

[2] As noted above, this timeline is slightly different for Burton's ADEA claims. *See* 42 U.S.C. § 626(d).

7

clear how the episodes described above relate to each other or to her firing by CTA. There are glimmers of clarity where, for instance, Burton describes being held in her supervisor's car against her will. But, even so, Burton fails to allege facts critical to her discrimination claims such as, most critically, discriminatory intent. The result is a list of grievances too disjointed for the defendants to reasonably be expected to respond.

Should Burton choose to amend her complaint, she should strive to describe in reasonable detail the events that gave rise to her contention that the defendants discriminated against her. Her allegations should faithfully reflect what she understands to be true but should also be specific enough that the defendants could reasonably glean the relevant dates, individuals, and events underlying her claims so that they may appropriately respond.

For these reasons, the Court dismisses Burton's claims against the CTA under the ADA, the ADEA, and Title VII, with leave to file an amended complaint.

**B**  **Section 1983 and 1981 claims**

The defendants contend that Burton's claims under 42 U.S.C. §§ 1981 and 1983 should also be dismissed. The Court agrees. The analysis of the claims under section 1981 is simple: section 1981 does not provide a right of action against state actors. *Campbell v. Forest Pres. Dist. of Cook Cty.*, 752 F.3d 665, 671 (7th Cir. 2014). Section 1981's protections may be enforced through a section 1983 claim, see *Phillips*, 2019 WL 1772882, at *3, but as a municipal agency, the CTA cannot be subject to a section 1981 suit. See *Arce v. Chi. Transit Auth.*, 193 F. Supp. 3d 875, 893 (N.D. Ill. 2016). The Court therefore dismisses Burton's section 1981 claim against the CTA without leave to amend. See *Indep. Trust Corp.*, 665 F.3d at 943. To the extent that the

section 1981 claims name the individual defendants in their official capacities, they are also not amenable to suit under section 1981, so those claims are dismissed as well. *See de Lima Silva v. Wis. Dep't of Corr.*, 917 F.3d 546, 559 n.12 (7th Cir. 2019) (affirming summary judgment on section 1981 claims against individual defendants in their official capacities).

As for section 1983, the Court's previous discussion of Burton's failure to articulate facts that would entitle her to relief applies with equal force here. But there are also additional pleading requirements beyond those required for claims under the ADA, the ADEA, and Title VII that apply to section 1983 claims. First, the Court notes that, unlike the statutes discussed earlier, claims against individual defendants are perfectly appropriate under section 1983. But, to the extent that Burton brings claims under section 1983 against the CTA as an entity, she must satisfy the requirements of *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Specifically, she must allege facts supporting a reasonable inference that

> (1) [the CTA] had an express policy that, when enforced, causes a constitutional deprivation; (2) [the CTA] had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority.

*McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000); *see also Spiegel*, 916 F.3d at 617-18. The amended complaint before the Court, even construed liberally, alleges none of these possible bases for the CTA's liability. Should she choose to pursue this claim in an amended complaint, Burton should take *Monell*'s requirements into account.

**Conclusion**

For the foregoing reasons, the Court grants the defendants' motion to dismiss [dkt. no. 50]. Plaintiff's complaint is dismissed, with leave to file an amended complaint that satisfies the requirements of this order and the law by no later than May 22, 2019.[3] If plaintiff does not file by that date an amended complaint that sets forth at least one viable claim over which the Court has jurisdiction, the Court will dismiss the case with prejudice. A status hearing is set for May 29, 2019 at 9:30 a.m.

*[signature]*
_____
MATTHEW F. KENNELLY
United States District Judge

Date: May 1, 2019

---

[3] The authorization to file an amended complaint does not apply to plaintiff's ADA, ADEA, and Title VII claims against individual defendants or her claims under 42 U.S.C. § 1981 against the CTA and individual defendants in their official capacities, which the Court has dismissed without leave to amend.