UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANNIE BURTON, <br><br> Plaintiff, <br><br> v. <br><br> CHICAGO TRANSIT AUTHORITY, DERRICK PITTMAN, REGINALD MURPHY, THERESA FLETCHER-BROWN, and VILLETTA WELLS, <br><br> Defendants. | Case No. 17-cv-08508 <br><br> Judge Martha M. Pacold |

**MEMORANDUM OPINION AND ORDER**

*Pro se* plaintiff Annie Burton filed this employment discrimination lawsuit against her former employer the Chicago Transit Authority (CTA) and three of its employees. The court previously dismissed Burton's first amended complaint for failure to state a claim [60] but granted her leave to file a second amended complaint. Burton did so, and defendants now move to dismiss that complaint with prejudice [68]. For the reasons set forth below, defendants' motion to dismiss is granted.

**BACKGROUND**

The following facts are taken from the complaint and the documents attached it and are assumed to be true for purposes of this motion.[1] *See Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). Annie Burton worked at the CTA as a bus driver from at least 2013 until she was terminated in December 2017. [63] at 1, 5 n.2, 6.[2] Defendants Pittman, Murphy, Fletcher-Brown, and Wells also were employed by the CTA during this period. [63] at 1, 5–6. The complaint alleges that the CTA and the individual defendants violated Burton's constitutional

---

[1] Unless otherwise specified, "complaint" refers to the operative complaint, Burton's second amended complaint [63].

[2] Bracketed numbers refer to district court docket entries and are followed by the page or paragraph number as appropriate. Page numbers refer to the CM/ECF page number.

and statutory rights. [63] at 1. The complaint includes numerous legal conclusions, but with respect to factual allegations, it alleges as follows.

Around October 22, 2016, Burton was injured when a potentially intoxicated driver hit a CTA bus; Burton does not state whether she was driving the bus. [63] at 2. Following the accident, Burton was taken to the hospital in an ambulance and released with instructions not to return to work for two days. *Id*.; *see also* [63-2]. Upon release, Burton asked a CTA supervisor, defendant Reginald Murphy, to give her a ride home. [63] at 2–3. Murphy agreed, Burton got into the government-issued SUV that he was driving, and Murphy locked the doors and drove away. [63] at 3. Burton did not know where he was driving and requested that he unlock the doors and let her out. [63] at 3. Murphy informed her that he was following instructions from the CTA manager, defendant Derrick Pittman. [63] at 3. When they arrived at the destination (which is not specified in the complaint), Murphy unlocked the doors and escorted Burton to Pittman. [63-1] at 3. The complaint contains no further details about the SUV ride, where Murphy drove, where Pittman was located, or what happened when Burton got to Pittman. The complaint does not say whether Burton returned to work after the October 2016 accident.

In January 2017, Burton wrote the CTA's president, complaining that she was kidnapped and falsely arrested by Murphy, Pittman, and a third CTA employee, Marie Marasovich, following the October 2016 bus accident. [63] at 5 n.2. In March 2017, Burton submitted a complaint to the Illinois Department of Human Rights (IDHR). [63] at 5.

On October 24, 2017,[3] Burton arrived at the CTA's office under the impression that she would be completing paperwork "to be removed from 605 or return to work." [63] at 5.[4] Defendants Theresa Fletcher-Brown and Villetta Wells, both managers at CTA, arrived while Burton was completing her 605 paperwork. Burton was not provided union representation during this meeting. [63] at 5. After the meeting with defendants Fletcher-Brown and Wells, a "Record of Interview" was created and Burton states that she was "suspend[ed]" and placed in a "drug program." [63] at 6–7. The Record of Interview stated, "She was found to be in violation of the following rules: General Rules 7 a, b, c 14 a, e and 24[.]" [63] at 7. Burton alleges that she did not violate the drug and alcohol policy, and that she was

---

[3] While the complaint says this meeting took place in October 2017, Burton's November 23, 2016 IDHR charge, [69-2] at 11–12, states that this meeting took place in October 2016.

[4] The complaint uses the terms "605 paperwork" and "605 meeting" without further explanation, and neither party elaborates on this term in the briefs. (Based on context, however, it appears that 605 is referring to a type of medical leave.)

2

terminated in retaliation for filing complaints with the IDHR, Office of Inspector General, and Illinois Labor Relations Board.[5] [63] at 6.

In addition to the foregoing, Burton contends that around September 27, 2017, she sent a complaint to the EEO unit at the CTA's Forest Glen garage (where she was stationed), complaining that she was being intimidated and "yell[ed] at" by a CTA bus clerk or serviceman, potentially named Robert Kaese, in a way that created a "hostile and unsafe work environment." [63] at 3.

Burton filed multiple complaints against the CTA with the IDHR, Office of Inspector General, and Illinois Labor Relations Board. [63] at 6. The complaint does not specify why or when those complaints were filed.

## PROCEDURAL HISTORY

Burton filed this lawsuit in November 2017, alleging retaliatory treatment for filing complaints with the EEOC and IDHR and discrimination on account of her age, race, and disability in violation of Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), and the Age Discrimination in Employment Act (ADEA), and constitutional claims (through 42 U.S.C. §§ 1981 and 1983). [1].

After she filed the lawsuit, Burton was terminated from the CTA in December 2017. *See* [44] at 2. She filed another charge with the IDHR following her termination, alleging retaliatory discharge and discrimination based on disability. [63] at 8; *see also* [39] at 7-10. In May 2018, defendants filed a motion to dismiss. [27]. Burton filed an amended complaint in July 2018, adding her termination. [39]. In light of the amended complaint, the court struck defendants' motion to dismiss and directed them to respond to the amended complaint. [45]. Defendants filed a second motion to dismiss. [50].

In an order dated May 1, 2019, the court dismissed Burton's amended complaint, dismissing certain claims with prejudice and others with leave to amend. [60] (Kennelly, J.). The court dismissed with prejudice the ADA, ADEA, and Title VII claims against the individual defendants and the 42 U.S.C. § 1981 claims against the CTA and the individual defendants in their official capacities. *Id*. at 10 n.3. The court warned Burton that if she did not file an amended complaint that set forth at least one viable claim, her case would be dismissed with prejudice. *Id*. at 1, 10.

---

[5] Burton contends that she filed multiple complaints with the EEOC and IDHR beginning in 2013. [63] at 1, 6. The court previously directed defendants to obtain records of any EEOC/IDHR complaints filed by Burton since January 2016. [66.] Defendants sent subpoenas to both agencies, and attached the documents they received, including three different EEOC/IDHR charges, to their motion to dismiss. *See* [69-1]–[69-7].

3

Burton timely filed a second amended complaint, again alleging that defendants violated the ADA, ADEA, Title VII, and 42 U.S.C. §§ 1983 and 1981; she also added an allegation that defendants violated the Revenue Sharing Act, 31 U.S.C. § 6711. [63]. The CTA, along with defendants Fletcher-Brown, Pittman, and Wells now move to dismiss the second amended complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). [68].

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A court may grant a motion to dismiss under Rule 12(b)(6) only if a complaint lacks "enough facts to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although a facially plausible claim need not give "detailed factual allegations," it must allege facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "Neither conclusory legal statements nor abstract recitations of the elements of a cause of action add to the notice that Rule 8 demands, so they do not help a complaint survive a Rule 12(b)(6) motion." *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cty.*, 804 F.3d 826, 832 (7th Cir. 2015) (citation omitted).

A *pro se* complaint must be construed liberally, and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted). A *pro se* plaintiff need not plead legal theories; it is the facts that count. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012); *Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

## ANALYSIS

### I. ADA, ADEA, and Title VII Claims

#### A. Title VII

Title VII prohibits employers from discriminating against any employee based on their race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). To state a claim of discrimination pursuant to Title VII, Burton need "allege only that [her] employer instituted a specific adverse employment action against her

4

based on [a protected characteristic]." *Phillips v. Baxter*, 768 F. App'x 555, 559 (7th Cir. 2019).

Title VII also protects employees from discrimination that creates a hostile or abusive work environment. *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 561 (7th Cir. 2016) (noting Title VII's prohibition on discrimination "encompasses the 'creation of a hostile work environment' that is severe or pervasive enough to affect the terms and conditions of employment"); *see also Huri*, 804 F.3d at 833–34. To state a Title VII hostile work environment claim, Burton must allege "(1) she was subject to unwelcome harassment; (2) the harassment was based on [a characteristic protected by Title VII]; (3) the harassment was severe or pervasive so as to alter the conditions of employment and create a hostile or abusive working environment; and (4) there is basis for employer liability." *Huri*, 804 F.3d at 834.

In other words, Burton's Title VII arguments require her to allege that an adverse action was taken, or that harassment occurred, because of a protected characteristic. She has not done so.

In the complaint, Burton alleges that she was driven from the hospital to an unspecified location against her will following a work accident, that she was suspended and later terminated in retaliation for filing earlier EEOC charges,[6] and that she was yelled at by a coworker. She does not claim—or allege any facts suggesting—that these actions occurred because of her race or sex.

Burton includes in the complaint a series of concerning but conclusory statements. Burton alleges that she was held in "captivity" while she was being transported in the SUV and states that she "assumed [that Murphy, the SUV's driver] was going [to] rape or sexually assault her." [63] at 4–5, 10–11, 13. These are serious and disturbing allegations, but contrary to the district court's prior dismissal order, in which Burton was instructed to describe the underlying events in reasonable detail ("describe in reasonable detail the events that gave rise to her contention that the defendants discriminated against her," [60] at 8), Burton has not done so. Neither Burton's complaint nor her response brief states what if anything happened inside the SUV except that she was transported against her will. Neither document states what Murphy said to Burton, aside from that he was following instructions from Pittman, or whether Murphy took any action apart from driving Burton to their destination. Neither document states when they arrived at their destination, much less where that destination was. Neither document states what happened once she was escorted to Pittman. Burton alleges no facts connecting Murphy's or Pittman's actions to her race or her sex. The only facts alleged about either defendant are that Murphy drove Burton against her will from the hospital to an unknown location and that Murphy said he was following

---

[6] The court addresses Burton's retaliation claims separately below.

Pittman's directions. While Burton alleges that she feared that Murphy was going to assault her, she does not allege what specific actions Murphy took or what Murphy said that gave rise to this fear except that Burton asked Murphy to give her a ride home, that he gave her a ride to a location (which Burton does not specify in her complaint), and that he locked the doors of the car and would not unlock them when she asked. These facts may give rise to a state-law tort claim, but they do not state a discrimination claim under Title VII. Burton has not alleged facts giving rise to an inference that the involuntary transportation happened because of her race or sex or that this incident was connected to her suspension or termination.

The same is true for Burton's other factual allegations—her suspension, her termination, and being yelled at by a co-worker. The complaint does not allege any facts suggesting that these unfavorable actions were connected to her race or sex. The complaint does not state a claim for discrimination under Title VII. Accordingly, Burton's Title VII discrimination claims are dismissed.

The court previously dismissed these claims for the same reason, and Burton's second amended complaint has not added any factual allegations to save them. As a result, they are dismissed with prejudice.

### B. ADEA

"The ADEA protects workers 40 years of age and older from age-based employment discrimination," *Wrolstad v. Cuna Mut. Ins. Soc'y*, 911 F.3d 450, 454 (7th Cir. 2018), and makes it unlawful for an employer to take adverse action against such employees "because of" their age, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 170 (2009) (quoting 29 U.S.C. § 623(a)). In other words, as in the Title VII context, Burton can prevail on her discrimination claim only if she pleads that she suffered an adverse employment action because of her age. *Barry v. City of Chicago,* No. 18-cv-02183, 2020 WL 1445607, at *3 (N.D. Ill. Mar. 25, 2020); *see also Haymon v. Metra*, No. 18-cv-00848, 2020 WL 1548953, at *10 (N.D. Ill. Mar. 31, 2020) (dismissing ADEA and Title VII claims because "there are no facts to support an inference that [defendant] took any adverse employment action against [plaintiff] on account of [her sex, color, or age]."). She does not do so.

The only time Burton's age is mentioned in the complaint is when she describes herself as a female "over the age of 45." [63] at 4, 10, 11, 12, 13. The complaint says nothing more about how her age is connected to any of the allegations in the complaint. This is not enough to state a claim under the ADEA. *See Haymon*, 2020 WL 1548953, at *10; *Cover v. OSF Healthcare Sys.*, No. 18-cv-50114, 2020 WL 108422, at *2 (N.D. Ill. Jan. 9, 2020). Burton's ADEA claims are once again dismissed, this time with prejudice.

6

C.   ADA

To state a violation of the ADA, Burton must allege that "[s]he is disabled within the meaning of the Act, is nevertheless qualified to perform the essential functions of the job either with or without reasonable accommodation, and has suffered an adverse employment action because of [her] disability." *Tate v. SCR Med. Transp.*, 809 F.3d 343, 345 (7th Cir. 2015). This requires her to identify her disability. *Id.* Burton alleges that she was discharged from the hospital following the October 2016 accident with a "total disability from working physcian [sic] statement." [63] at 2. She does not identify that disability in the complaint. She attaches the referenced physician's note to her response brief [63-2], but it does not identify a disability. It simply restricted Burton from working for two days and required a follow-up appointment. *Id.* Because the complaint does not identify Burton's disability, it does not state a claim under the ADA.

Moreover, as the court stated in its previous dismissal order, Burton has not alleged that any discrimination occurred *because of* a disability. [60] at 8. Accordingly, Burton's ADA discrimination claim is dismissed with prejudice.

D.   Retaliation

In addition to the Title VII, ADEA, and ADA discrimination claims, Burton alleges that the CTA retaliated against her in violation of these statutes by suspending her and later terminating her.

To state a retaliation claim under any of these statutes, Burton must allege that she engaged in activity protected by one of these statutes and suffered an adverse employment action as a result of that activity. *See Luevano,* 722 F.3d at 1029 (Title VII); *Wrolstad,* 911 F.3d at 456 (ADEA); *Sanders v. Illinois Dep't of Cent. Mgmt. Servs.,* 593 F. App'x 575, 577 (7th Cir. 2015) (ADA). A "protected activity" consists either of opposing unlawful discrimination or filing a charge or complaint of discrimination. *See Evans v. United Parcel Serv., Inc.*, No. 19-cv-04818, 2020 WL 777253, at *2 (N.D. Ill. Feb. 18, 2020) (Title VII); *Wrolstad,* 911 F.3d at 456 (ADEA); *Sanders,* 593 F. App'x at 577 (ADA).

Burton alleges that she was suspended on October 24, 2017,[7] in retaliation for filing complaints with the IDHR, the Office of Inspector General, and the Illinois Labor Relations Board. [63] at 6. She does not specify the basis for any of those complaints, nor does she attach them to the complaint. Plaintiff also alleges that she was terminated in retaliation for something but does not explain what. *Id.* at 1. Burton does not allege that the complaints she filed were based on discriminatory

---

[7] Her second EEOC charge, discussed above, suggests this date may be October 24, 2016. [69-2] at 11–12.

conduct. She does not describe the content of any of her complaints, except for the complaint she filed after her suspension. While defendants attached three IDHR charges to their motion to dismiss, the complaint does not reference any specific charges, nor does it allege which charges, if any, are connected to Burton's suspension or termination. Because Burton does not allege that she was retaliated against for complaining of *discrimination*, she has not alleged that she engaged in protected conduct under Title VII, the ADEA, or the ADA.[8] *See Sanders*, 593 F. App'x at 577 ("Because [plaintiff] has never alleged that in the state proceedings he protested discrimination, that litigation was not ADA-protected activity.") Thus, her retaliation claims are dismissed with prejudice for failure to state a claim.[9]

## II.     Section 1983

"Section 1983 provides a procedural vehicle for lawsuits vindicating federal constitutional or statutory rights." *Haymon*, 2020 WL 1548953, at *5 (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1994)). To state a Section 1983 claim, Burton must allege that she was "deprived of a right secured by the Constitution or federal law, by a person acting under color of law." *Thurman v. Vill. of Homewood*, 446 F.3d 682, 687 (7th Cir. 2006).

Burton alleges that defendants violated her rights protected by the Bill of Rights and by the Thirteenth, Fourteenth, and Fifteenth Amendments. Burton is not required to give detailed factual allegations to state a claim, but she must provide "more than labels and conclusions" and give the defendants fair notice of her claims against them. *Twombly*, 550 U.S. at 555. As discussed below, Burton's allegations do not plausibly allege that she has been deprived of a right secured by the Constitution.[10]

---

[8] The court only addresses these claims with respect to the CTA. To the extent Burton alleges claims under the ADA, ADEA, or Title VII against the individual defendants, those claims were dismissed with prejudice in the court's May 1, 2019 order. [60] at 10 n.3. As stated there, "the ADA, ADEA, and Title VII provide for liability only with regard to the plaintiff's employer, not the plaintiff's supervisors or other individuals working for the plaintiff's employer." *Id*. at 4.

[9] Because the court holds that Burton has failed to state a claim under the ADA, ADEA, and Title VII, it declines to address whether she has also failed to exhaust administrative remedies for these claims.

[10] The CTA seeks dismissal of Burton's Section 1983 claims under *Monell*. To bring constitutional claims against the CTA, Burton must satisfy the requirements of *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978). As the court explained in its previous dismissal order, this requires her to allege facts supporting a reasonable inference that she (1) suffered a constitutional deprivation and that (2) it was caused by: (a) an express policy; (b) a widespread practice that is so permanent or well settled as to constitute a custom or usage within the force of law; or (c) a person with final policymaking

Read generously, Burton's complaint appears to allege that the CTA's drug and alcohol policy, its decision to suspend Burton in October 2016, its decision to terminate her in December 2017, and the SUV ride in October 2016 violated various constitutional rights, invoking thirteen amendments. [63] at 9–12. She alleges that the CTA's ordinance, requiring "'[a]ll employees covered by this policy who are involved in an accident . . . to submit to a drug and alcohol test,'" violated her constitutional rights, and that she was improperly found to have violated the policy, suspended "into an illegal drug program" by Fletcher-Brown and Wells, and terminated by a CTA representative with final policymaking authority. *Id*. at 7, 9–11. The complaint does not explain how the SUV ride, involving Murphy and Pittman, fits into the allegations related to the drug and alcohol policy. The court addresses these incidents in turn below.

First, Burton alleges that a CTA drug and alcohol policy or ordinance violated her constitutional rights. [63] at 9–10. Neither Burton nor the defendants filed the policy with the court.[11] Burton also does not explain how the ordinance violated her rights, but construing her complaint liberally, it appears she is contending that the CTA's policy, which requires bus drivers to submit to a drug and alcohol test following a bus accident, is unconstitutional. Burton does not allege that she was tested, and based on her other allegations, it appears that she was not. She also does not state how any of the individual defendants are connected to the policy.

Nonetheless, drug and alcohol tests imposed by law and enforced by state officials are searches within the meaning of the Fourth and Fourteenth Amendments. *See Chandler v. Miller*, 520 U.S. 305, 313 (1997); *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 616 (1989). The Fourth Amendment, applied to state actors through the Fourteenth Amendment, *New Jersey v. T.L.O.*, 469 U.S. 325, 334 (1985), protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

---

authority. [60] at 9 (citing *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000)). In her amended complaint, Burton cites an express CTA policy and an unnamed person with final decision-making authority, but she does not allege a constitutional deprivation. Accordingly, while her amended complaint satisfies the second requirement in *Monell*, it does not satisfy the first—it does not allege a constitutional deprivation.

[11] Defendants cite Chicago Transit Board Ordinance Number 014–006 in their motion, but that ordinance only *references* the drug and alcohol policy, which the parties did not provide and which the court could not locate. *See* https://www.transitchicago.com/board/ordinances/?Keyword=014-006 (last accessed September 22, 2021).

> To be reasonable under the Fourth Amendment, a search ordinarily must be based on individualized suspicion of wrongdoing. But particularized exceptions to the main rule are sometimes warranted based on "special needs, beyond the normal need for law enforcement." When such "special needs"—concerns other than crime detection—are alleged in justification of a Fourth Amendment intrusion, courts must undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties.

*Chandler*, 520 U.S. at 313–14. While the court ordinarily could not determine the reasonableness of a search based on the complaint, Burton does not allege a search. She does not allege that she took a drug or alcohol test, whether she refused to do so, or when (if ever) she was asked to do so. Accordingly, the complaint does not allege an unconstitutional search.

Second, Burton alleges that her termination, which was decided by "Defendants' representative, who interprets and ha[s] final policymaking authority," was unconstitutional. [63] at 11–12. She also alleges that Fletcher-Brown and Wells participated in a disciplinary hearing that led to her suspension into a drug program. As defendants argue, Burton does not allege who participated in her termination or how her termination violated the Constitution. She similarly does not allege how her suspension violates the Constitution. Plaintiffs can bring retaliation claims (related to discharges and suspensions) pursuant to Section 1983, but to do so, Burton must first allege that she participated in an activity protected by the Constitution. *See Hutchins v. Clarke*, 661 F.3d 947, 955 (7th Cir. 2011) (recognizing "the government cannot retaliate against its employees for engaging in constitutionally protected speech" and such First Amendment claims may be brought pursuant to Section 1983). She has not done so. The complaint does not allege a constitutional claim related to Burton's suspension or termination.

Finally, Burton alleges that Murphy, at Pittman's instruction, drove her to Pittman, and that this violated the Constitution. To the extent this allegation attempts to state an unlawful seizure under the Fourth Amendment, it has not done so. "The Fourth Amendment, which protects individuals' liberty and privacy interests, principally applies in the context of law enforcement, preventing police from searching private areas without a warrant absent exigent circumstances and from seizing suspected criminals unreasonably." *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1012 (7th Cir. 1995) (citing *Ingraham v. Wright*, 430 U.S. 651, 673 n. 42 (1977)). Nonetheless, as stated above, the protections of the Fourth Amendment have been held to extend to certain conduct by non-law enforcement government actions. *See, e.g.*, *Skinner*, 489 U.S. at 616.

To the extent Burton alleges that Murphy at the direction of Pittman arrested or seized her in violation of the Fourth Amendment, they could not do so

under of color of state law, and thus would not be liable under Section 1983. To state an unlawful seizure under Section 1983, she must allege that she was "seized" by someone acting under color of state law. *See Honaker v. Smith*, 256 F.3d 477, 484 (7th Cir. 2001). "It is firmly established that a defendant in a § 1983 suit acts under color of state law when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49–50 (1988). Thus, a person employed by the state "acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 50. "[A]cts by a state officer are not made under color of state law unless they are related in some way to the performance of the duties of the state office." *Honaker*, 256 F.3d at 458. Burton does not allege that Murphy or Pittman, as transit employees, had ordinary authority under state law to make an arrest, that they were deputized to do so, or that the SUV ride led to some sort of encounter with law enforcement. Instead, she alleges she was driven in a CTA vehicle from the hospital to a CTA supervisor. The allegations related to the SUV ride do not state a plausible violation of the Fourth Amendment. *See id.*; *see also Sroga v. Hondzinski*, No. 16-cv-05796, 2017 WL 3278916, at *3 (N.D. Ill. Aug. 2, 2017) (dismissing plaintiff's claim that he was seized in violation of the Fourth Amendment because street and sanitation employees that towed plaintiff's car did not have police powers "to stop, arrest, or generally seize people") (emphasis omitted).

Burton has not alleged a constitutional deprivation. Accordingly, her Section 1983 claims are dismissed with prejudice.

### III. Revenue Sharing Act

Finally, Burton contends that defendants violated the Revenue Sharing Act, 31 U.S.C. § 6711(a). [63] at 14. The Revenue Sharing Act states, "No person in the United States shall be excluded from participating in, be denied the benefits of, or be subject to discrimination under, a program or activity of a unit of general local government because of race, color, national origin, or sex if the government receives a payment under this chapter." 31 U.S.C. § 6711(a). The Act's prohibition on discrimination also applies to discrimination because of age, disability, or religion. 31 U.S.C. § 6711(b). Before bringing an action under the Revenue Sharing Act, an individual must exhaust administrative remedies by filing an administrative complaint with the Secretary of Housing and Urban Development (*see* 31 U.S.C. § 6720(a)(9)), the head of another United States government agency, or the appropriate state agency. 31 U.S.C. § 6716.

As set forth above, Burton has not alleged that she was subject to discrimination under a CTA program or activity because of her race, color, sex, age, or disability. She likewise has not alleged that she was excluded from participating in or denied the benefits of any CTA program or activity, much less that it was done

11

because of her race, color, sex, age, or disability. Accordingly, her claims under the Revenue Sharing Act are dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, the court grants the defendants' motion to dismiss [68]. Because this is the second dismissal for failure to state a claim, and pursuant to the court's earlier warning ([60] at 10), Burton's complaint is dismissed with prejudice.

12